**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-21-0000460**
**23-JUN-2022**
**07:56 AM**
**Dkt. 74 SO**

NO. CAAP-21-0000460

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

CHRISTINE DINE THOMAS, Plaintiff-Appellant,
v.
SEA SOVEREIGN THOMAS, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NUMBER 1DV151006527)

**SUMMARY DISPOSITION ORDER**
(By:  Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

In this divorce case, self-represented Plaintiff-Appellant Christine Dine Thomas, now known as Christine Dine **Flinterman**, appeals from the post-decree **"Order** Denying Plaintiff's Motion for Extension of Time to File Notice of Appeal" entered by the Family Court of the First Circuit on July 14, 2021.[1]  For the reasons explained below, we affirm the Order.

### Background

Flinterman was married to Defendant-Appellee Sea Sovereign **Thomas**.  Flinterman filed a complaint for divorce on April 8, 2015.  The Divorce Decree was entered on September 11,

---

[1]     The Honorable Bryant Zane presided.

2015; Flinterman then resumed the use of her last name before the marriage.

On September 1, 2020, Flinterman (through counsel) filed a motion for post-decree relief. She sought a share of Thomas's military pension. The motion was heard on January 8, 2021. The family court orally denied the motion.

On March 4, 2021, the family court entered the written order denying the motion. A notice of appeal from the order was due on Monday, April 5, 2021. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4(a)(1).[2]

On April 12, 2021, Flinterman (through new counsel) filed a motion for an extension of time to file her notice of appeal. The motion was heard on April 28, 2021. The Order denying the motion was entered on July 14, 2021. This appeal followed.[3]

## Standard of Review

We review an order denying a motion to extend time to file notice of appeal for abuse of discretion. See Eckard Brandes, Inc. v. Dep't of Lab. & Indus. Rels., 146 Hawaiʻi 354, 358, 463 P.3d 1011, 1015 (2020). "A court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." Berry v. Berry, 127 Hawaiʻi 243, 254, 277 P.3d 968, 979 (2012) (citation omitted).

---

[2] The 30th day from March 4, 2021 was Saturday, April 3, 2021. See HRAP Rule 26(a).

[3] Flinterman's opening brief does not comply with HRAP Rule 28(b). Thomas requests that the appeal be dismissed, or that Flinterman be sanctioned, for non-compliance; he correctly observes that Flinterman's "errors and omissions place an unnecessary burden upon [Thomas] who is compelled to respond to [Flinterman's opening brief], as well as the appellate court to render an informed judgment." However, the Hawaiʻi Supreme Court instructs that to promote access to justice, pleadings prepared by self-represented litigants should be interpreted liberally, and self-represented litigants should not automatically be foreclosed from appellate review because they fail to comply with court rules. Erum v. Llego, 147 Hawaiʻi 368, 380-81, 465 P.3d 815, 827-28 (2020). Accordingly, we address the issues we discern to be raised by Flinterman.

The family court entered findings of fact and conclusions of law on September 3, 2021, in support of its decision.  We review findings of fact under the "clearly erroneous" standard.  <u>Est. of Klink ex rel. Klink v. State</u>, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007).  A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding or when, despite substantial evidence to support the finding, we are left with a definite and firm conviction that a mistake has been committed.  <u>Id.</u>  "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."  <u>Id.</u> (citations omitted).  We review conclusions of law under the "right/wrong" standard.  <u>Id.</u>  A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned.  <u>Id.</u>

### Discussion

Flinterman's motion to extend time was filed after the deadline to file a notice of appeal from the order denying her motion for post-decree relief had passed.  HRAP Rule 4(a)(4)(B) applies to this situation; it provides, in relevant part:

> The court or agency appealed from, upon a showing of **excusable neglect**, may extend the time for filing the notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by subsections (a)(1) through (a)(3) of this Rule.

(emphasis added).  Thus, to obtain an extension of time, Flinterman had to show that her failure to timely file the notice of appeal was due to her "excusable neglect."

> "[E]xcusable neglect" is to be construed pursuant to its plain language: "neglect" that is "excusable," which, involves a broad, equitable, inquiry taking into account all relevant circumstances surrounding the party's omission. . . . ***[T]he determination of whether "excusable neglect" exists should lie largely in the discretion of the court.***

<u>Eckard Brandes</u>, 146 Hawaiʻi at 364, 463 P.3d at 1021 (cleaned up) (emphasis added).

Flinterman's motion for extension of time argued:

> In the instant case, based on the declarations and exhibits included below, though the dispositive Order in this case issued March 4, 2021, [Flinterman]'s trial counsel did not alert her to said filing until March 15, 2021. Though trial counsel included the March 4, 2021, Order in their communication to [Flinterman], [Flinterman] wrongly assumed that her counsel had apprised her of the filing immediately upon said Order being entered. Therefore, she wrongly assumed that she had until April 14, 2021, thirty days from March 15, to file her notice of appeal. [On] April 9, 2021, [Flinterman] dutifully began, <u>pro se</u>, to prepare a notice of appeal using court forms from the judiciary website so that she would be able to file her notice of appeal prior to her perceived April 14, 2021 deadline. It was as she was preparing said notice that she realized her neglect.

The motion was supported by Flinterman's declaration, which stated:

> 4. March 15, 2015, I was notified via my trial counsel's messaging app . . . that the Order had been entered . . . ;
>
> 5. I wrongly assumed that he notified me the same day that the Order was issued, and thereby wrongly assumed that I had 30 days from March 15, 2021, to file my notice of appeal;
>
> 6. April 9, 2021, I began attempting a notice of appeal, <u>pro se</u>, as there is a possibility of an ineffective assistance of counsel claim, and at that time I noticed the filestamp [sic] on the Order, and realized my grievous error;
>
> . . . .
>
> 8. I am a full-time single mother of three young boys, and during the Covid pandemic, my nights and days have been filled with taking care of the children;
>
> 9. Because of Covid, I've been unemployed and on Medicaid, and am doing everything I can to make ends meet[.]

Flinterman testified at the hearing on her motion to extend time. She testified that she understood, shortly after the January 8, 2021 hearing where the family court announced its decision to deny her motion for post-decree relief, that she

4

would have 30 days from entry of the written order to file a notice of appeal.  She also testified:

> Q.    (By [Thomas's counsel]) Okay.  So, now, thereafter, you did try to track down the order from [your former attorney], right, on March 8th?
>
> A.    Yes.
>
> Q.    Okay. And you messaged him and you have this Space [sic] Camp HQ messaging app, right?
>
> A.    Yes.
>
> Q.    Okay. And on March 8th you were informed I don't have the order yet, right?
>
> A.    Yeah.
>
> Q.    Okay. And then on March 15th you get a communication from his staff member, and that communication has the order attached, right?
>
> A.    On March 15th, yes.
>
> Q.    And you received that message?
>
> A.    I received the message.
>
> Q.    And you reviewed that message?
>
> A.    No, I didn't review -- I saw -- the -- the message coming from his attorney I saw March 15th and (indiscernible) I got -- like I'm -- like since -- ever since the pandemic, it's like e-mail -- technol-- technology is the only way (indiscernible) and there's like hundreds of e-mails a day, and I saw the e-mail come in and I (indiscernible) it's in, it's here, I have to go -- I have to work on it, and so I have -- I have a 30-day --
>
>         . . . .
>
> Q.    On March 15th, when you got that message from [your former attorney]'s office, you knew that the file stamp was important because you had already been informed of that?
>
> A.    No, I don't -- I honestly -- I -- like when I have -- (indiscernible) this is a -- a motion from -- I mean, this is an (indiscernible) file stamp March 4th.  He just said whatever -- here, I'll look at it again.  I forgot the language, but he said we are in receipt of the following order from the Plaintiff's [sic] office (indiscernible) Galario, who is his assistant, and I just -- you know, the beginning of it says this is regarding Plaintiff's [sic] motion, so, I mean, I -- I know -- I'm not saying -- I know that I missed the deadline, but (indiscernible) it's not a -- not like (indiscernible) you know, willful disregard of the court, it was honestly like a hundred percent honest, I did not read the -- the date of March 4th.

. . . .

Q. Okay. Now, isn't it true that you didn't actually open that message and the attachment until 26 days later?

A. April 9th. I think that's when I (indiscernible).

Q. Yes.

A. Okay. Yes.

. . . .

Q. (By [Thomas's counsel]) I want to talk about the entirety of that message. Isn't it true that what you're saying is you received that message on March 15th, and you read a portion of it, but you're saying you didn't read the whole thing?

A. Yes.

The family court made the following findings of fact:

11. The Order re: [Flinterman]'s Motion for Post-Decree Relief filed September 1, 2020 ("the Order") was filed on March 4, 2021;

12. On March 8, 2021, [Flinterman] contacted [her former attorney] through communication application, "lawofficeofchristopherdthomas.base camphq.com" ("Basecamphq"), and inquired about whether the court had yet issued a written order;

13. On the same day, [Flinterman's former attorney] replied to [Flinterman] indicating he had not yet been provided the order, but that he would let her know when he gets it;

14. On the same day, [Flinterman] replied indicating she knew she needed a written order before filing a notice of appeal within 30 days;

15. On March 15, 2021, [Flinterman's former attorney's] staff sent [Flinterman] a Basecamphq communication indicating, "we are in receipt of the following Order from Opposing Counsel's office";

16. Attached as a PDF file to that Basecamphq communication was the Order. The attachment was entitled, "Order re: Plaintiff's Motion for Post-Decree Relief (filed 2021.03.04).pdf";

17. [Flinterman] read the email on March 15, 2021, but neglected to open the attachment which contained the Order;

18. [Flinterman] further neglected to read the title of the attachment at that time;

6

19.   [Flinterman] did not open the attached Order until April 9, 2021;

. . . .

24.   [Flinterman] assumed that March 15, 2021, the date that she received the Basecamphq communication, was the entry date of the Order;

25.   [Flinterman] consequently further assumed that the deadline to file the NOA was 30 days after March 15, 2021[.]

These findings were supported by substantial evidence and are not clearly erroneous.

The family court made the following conclusion of law:

5.   Considering all relevant, surrounding circumstances, [Flinterman]'s neglect that resulted in the failure to file the NOA within 30 days of the filing of the Order was not excusable. . . .  HRAP Rule 4(a)(4)(B).

The conclusion was supported by the family court's findings of fact and reflected an application of the correct rule of law. Accordingly, the family court did not abuse its discretion by denying Flinterman's motion to extend time.  Eckard Brandes, 146 Hawaiʻi at 358, 463 P.3d at 1015.

Flinterman also contends that the family court erroneously denied her oral motion for recusal.  We decline to consider the contention because Flinterman cites no legal authority supporting the proposition that the family court judge should have recused himself or been disqualified and, in the latter case, Flinterman fails to show compliance with HRS § 601-7(b).[4]

---

[4]   **§601-7 Disqualification of judge; relationship, pecuniary interest, previous judgment, bias or prejudice.**

. . . .

(b)  Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists
(continued...)

For the foregoing reasons, the "Order Denying Plaintiff's Motion for Extension of Time to File Notice of Appeal" entered by the family court on July 14, 2021, is affirmed.

DATED: Honolulu, Hawaiʻi, June 23, 2022.

On the briefs:

Christine D. Thomas,
Self-represented
Plaintiff-Appellant.

Crystal K. Glendon,
for Defendant-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge

---

[4](...continued)
and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith. Any judge may disqualify oneself by filing with the clerk of the court of which the judge is a judge a certificate that the judge deems oneself unable for any reason to preside with absolute impartiality in the pending suit or action.